IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HAROLD MCMILLAN,                    §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §       CIVIL ACTION NO. H-14-1215
                                    §
MEMORIAL HERMANN HEALTH             §
SYSTEM, et al.,                     §
                                    §
        Defendants.                 §

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendants Asaad Abdelmessiah[2] ("Abdelmessiah") and Memorial Hermann Health System's ("MHHS") Federal Rule of Civil Procedure ("Rule") 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16) and Defendant S.J. Cleveland's ("Cleveland") Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 20). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants Abdelmessiah and MHHS's motion be **GRANTED IN PART AND DENIED IN PART** and Defendant Cleveland's motion be **GRANTED IN PART AND DENIED IN PART**.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 24.

[2] Plaintiff's Original Petition spelled this defendant's surname "Adbelmessiah." See Doc. 1-2, Ex. A to Notice of Removal, Pl.'s Original Pet. p. 1. Per Defendant Abdelmessiah, the correct spelling is "Abdelmessiah." See Doc. 7, Certificate of Interested Parties p. 1 & n.1.

# I.  Case Background

Plaintiff filed this civil rights action against a health system, the head of security at Memorial Hermann Medical Center campus ("the Hospital"), and a Houston Police Department ("HPD") officer, alleging violations of 42 U.S.C. § 1983 ("Section 1983"), a violation of 42 U.S.C. § 1985 ("Section 1985"), intentional infliction of emotional distress, and negligent hiring and supervision.

## A.  Factual Background

Plaintiff, "an educated and well-mannered African American man in his mid-50s," is a musician living in Austin.[3] Plaintiff's height is five feet and nine inches, and his weight is approximately 140 pounds.[4] At the time of the incident giving rise to this lawsuit, Plaintiff wore dreadlocks and was dressed in bohemian attire.[5]

In March 2012, Plaintiff's brother died in the emergency room at the Hospital after suffering a heart attack.[6] The Hospital took possession of the brother's personal belongings after his death.[7] Shortly thereafter, Plaintiff contacted the Hospital's customer

---

[3]    Doc. 15, Pl.'s 1st Am. Compl. pp. 13, 18.

[4]    Id. p. 22.

[5]    Id. p. 18.

[6]    Id. p. 11.

[7]    Id.

relations office via telephone to make arrangements to collect his brother's belongings.[8] An employee of Defendant MHHS confirmed that the Hospital routinely catalogued and held a patient's belongings and, pursuant to the Hospital's policy, "commonly released [the belongings] upon receipt of any identification capable of showing [that the requester] is related to the patient."[9]

The Hospital's staff member assured Plaintiff that his brother's belongings "would be entrusted to the care of the Hospital Security Department," which was always open.[10] Plaintiff informed the staff member that he would arrive on April 5, 2012, at approximately 5:00 p.m., and the staff member promised Plaintiff that she would "personally inform" security personnel of Plaintiff's scheduled arrival, as well as provide the necessary documentation and relay that Plaintiff had the authority to claim his brother's belongings.[11]

Plaintiff arrived as scheduled and checked in at the Hospital's front desk, explaining that he had arranged with another staff member to pick up his brother's belongings.[12] The second

---

[8]  Id.

[9]  Id. p. 12; see also id. p. 11.

[10]  Id. p. 12.

[11]  Id. see also id. p. 13.

[12]  Id. p. 13.

staff member on duty could not locate the belongings "after a minor attempt" and advised Plaintiff to return to Austin until they could be located.[13]  Indicating that making a second trip would cause him hardship, Plaintiff asked to speak with a supervisor.[14]  A third staff member arrived and informed Plaintiff that the belongings had been found.[15]  She agreed to complete the necessary paperwork and deliver it to the security office, where she then directed Plaintiff.[16]

Upon arriving at the security office, Plaintiff addressed Defendant Abdelmessiah, a supervisor in the security department, through the office's protective glass window.[17]  Plaintiff explained his errand and recounted his prior interactions with the other staff members.[18]  Defendant Abdelmessiah confirmed that security had located the belongings, but he refused to deliver them to Plaintiff because "there may be an existing dispute over the items' ownership sufficient to withhold [them] specifically from Plaintiff."[19]

Plaintiff provided Defendant Abdelmessiah with the name of one of the staff members who had assured Plaintiff that he would be

---

[13]  Id.

[14]  Id.

[15]  Id.

[16]  Id. p. 14.

[17]  Id.

[18]  Id. pp. 14-15.

[19]  Id. p. 15.

4

able to retrieve the belongings by presenting personal identification.[20] Unmoved, Defendant Abdelmessiah explained that he could not verify that he should release the items to Plaintiff because the customer relations office was closed at the time.[21] Plaintiff asked Defendant Abdelmessiah to page either the first or last staff member with whom Plaintiff had spoken, but Defendant Abdelmessiah refused, stating, "You could be anyone, I don't know you *from Adam* and I'm not turning anything over to you. For all I know, your family is fighting over his belongings."[22]

At that moment, Plaintiff understood Defendant Abdelmessiah's comment to insinuate discriminatory animus against African-American men but "ignore[d] the insinuation and continue[d] to respond reasonably as would be expected of a person in the same or similar situation attempting to navigate the Hospital's policies, procedures, and/or customs."[23] Plaintiff repeated the information that he had been given by the prior staff members but allowed that he did not want to argue and would wait until a supervisor was available to resolve the issue.[24]

"[V]isibly agitated with Plaintiff's request to speak with a

---

[20]    Id. p. 16.

[21]    Id.

[22]    Id.

[23]    Id. p. 17.

[24]    Id.

senior staff member," Defendant Abdelmessiah told Plaintiff that the only supervisor there was Defendant Abdelmessiah himself and initially refused to page anyone.[25] Defendant Abdelmessiah later stated that he had paged a supervisor but did not reveal at what point he had done so.[26] In the meantime, Defendant Abdelmessiah "continued verbally demeaning and provoking Plaintiff, particularly concerning his physical appearance and attire."[27] Plaintiff asked Defendant Abdelmessiah to cease making "insulting and humiliating comments."[28] Other than offering assurances that he had no intention in escalating the conversation into an argument with Defendant Abdelmessiah, Plaintiff "politely wait[ed] for the supervisor and made no further requests of Abdelmessiah."[29]

Although Plaintiff "behaved lawfully and peacefully," Defendant Abdelmessiah solicited the assistance of Defendant Cleveland, an HPD officer who was patrolling the Hospital's grounds at the time.[30] Defendant Cleveland had not witnessed any of the conversation between Plaintiff and Defendant Abdelmessiah and did not assess the situation or conduct an investigation prior to

---

[25] Id.

[26] Id. pp. 17–18.

[27] Id. p. 18.

[28] Id.

[29] Id.

[30] Id. pp. 18–19.

emerging from the security office with Defendant Abdelmessiah and three other security officers to confront Plaintiff.[31] All five officers were tall, heavy, and muscular and were "clearly posturing for a confrontation."[32]

Defendant Cleveland demanded that Plaintiff enter the security office.[33] Plaintiff asked whether he had "done something wrong" but received no response from Defendant Cleveland other than a second request for Plaintiff to enter the security office.[34] An inquiry by Plaintiff regarding the presence of cameras in the room where Defendant Cleveland was taking Plaintiff elicited a third request.[35] Plaintiff asked again about cameras, and Defendant Cleveland reported that there were none.[36] Plaintiff asked to remain in the hallway where there were cameras, but Defendant Cleveland repeated his request for Plaintiff to follow Defendant Cleveland into the security office.[37]

Plaintiff then asked if Defendant Cleveland would audio record the conversation, and, when Defendant Cleveland said that he would not, Plaintiff took out his own cell phone and stated that he

---

[31]    Id. pp. 19-20.

[32]    Id. p. 20.

[33]    Id.

[34]    Id.

[35]    Id.

[36]    Id.

[37]    Id. at 21.

7

intended to record the interaction.[38]  "Cleveland suddenly slapped the phone out of Plaintiff's hand with extreme force, grabbed Plaintiff, pulled Plaintiff around so his back was pressed to Cleveland's chest, and pulled Plaintiff up off the floor by forcing his forearm up between both of Plaintiff's arms and wrapping his arm around Plaintiff's neck."[39]  Defendant Cleveland held Plaintiff in this position while repeating, "Stop resisting."[40]

> Still suspending Plaintiff off the floor in this choke position, Cleveland then rushed towards the Security Office door, whereupon he used Plaintiff's head to force the closed door open.  Cleveland threw Plaintiff to the ground still face first, cuffed Plaintiff behind his back, forcefully jolted Plaintiff up from the floor and pushed him down into a chair.[41]

When Plaintiff asked if he was under arrest, Defendant Cleveland responded, "You are now."[42]  With Plaintiff seated, handcuffed, and supervised by Defendant Abdelmessiah and the other three security officers, Defendant Cleveland exited to make a telephone call.[43]  When he returned, he stated that he "[h]adn't decided yet" with what to charge Plaintiff and left again.[44] "Plaintiff asked yet again for the reason for his assault and

---

[38] Id.

[39] Id.

[40] Id.

[41] Id. p. 22.

[42] Id. p. 23.

[43] Id.

[44] Id.

8

detention" when Defendant Cleveland returned but received a similar response as that given previously.[45]

A staff member whom Plaintiff had not met entered the room at one point.[46] Plaintiff asked for her help to resolve the situation, but Defendant Cleveland instructed her not to speak with or about Plaintiff in any way.[47] She complied, remaining in the room.[48]

When blood from a head wound began dripping into his eyes, Plaintiff requested medical attention.[49] Defendant Cleveland refused Plaintiff medical attention, stating that Plaintiff would receive care at the jail.[50] When Plaintiff made second request, Defendant Cleveland denied that request as well[51] None of the other Hospital's staff members in the room offered help, or, in fact made any reply at all to Plaintiff's requests.[52]

Defendant Abdelmessiah, who was wearing slacks, a dress shirt, and a tie, pointed to his own attire and told Plaintiff that he "could have avoided any problems" if he had dressed in that style.[53]

---

[45] Id.

[46] Id. p. 24.

[47] Id.

[48] Id.

[49] Id.

[50] Id. p. 25.

[51] Id.

[52] Id.

[53] Id. p. 26.

9

Defendant Cleveland escorted Plaintiff out of the Hospital to the custody of another HPD officer for transport to HPD for processing.[54] Plaintiff was detained for approximately thirty hours without receiving any treatment for his head wound.[55] Defendant Cleveland submitted a probable cause affidavit that alleged that Plaintiff had interfered with Defendant Cleveland's official duties.[56] Charges were never pursued, the "allegations being immediately dismissed under prosecutorial discretion for insufficient supporting evidence."[57]

While Plaintiff was in custody, the daughter of his deceased brother's girlfriend retrieved the brother's belongings, albeit with some difficulty.[58] They ultimately were released based only on her personal identification and her representation that she was a relative with the authority to collect them.[59]

**B.  Procedural Background**

Plaintiff filed this action in Texas state court on April 7, 2014.[60] On May 2, 2014, Defendant MHHS removed the action to this

---

[54]    Id.

[55]    Id.

[56]    Id. p. 27.

[57]    Id.

[58]    Id. pp. 26-27.

[59]    Id. p. 27.

[60]    See Doc. 1-2, Ex. A to Notice of Removal, Pl.'s Original Pet.

court based on federal question jurisdiction prior to any other defendant being served.[61] In addition to Defendant MHHS, Plaintiff originally filed suit against Defendants Cleveland and Abdelmessiah, as well as the three unnamed Hospital's security guards and the unnamed Hospital's staff member who arrived during Plaintiff's detention.[62]

On May 9, 2014, Defendant MHHS filed a motion to dismiss the petition for failure to state a claim, but withdrew the motion when Plaintiff amended his complaint.[63] In the amended complaint, filed on June 4, 2014, Plaintiff dropped several parties and causes of action.[64]

Against Defendant Cleveland, in his individual and official capacities, Plaintiff's amended complaint raised Section 1983 claims for violation of his Fourth Amendment and Fourteenth Amendment rights and a Section 1985 claim for conspiracy to violate Plaintiff's constitutional rights.[65] Against Defendant Abdelmessiah, Plaintiff raised a Section 1983 claim for violation of his Fourteenth Amendment rights, a Section 1985 claim, and

---

[61]    See Doc. 1, Notice of Removal p. 2.

[62]    See Doc. 1-2, Ex. A to Notice of Removal, Pl.'s Original Pet. p. 2.

[63]    See Doc. 4, Def. MHHS's Mot. to Dismiss; Doc. 12, Unopposed Mot. to Withdraw Mot. to Dismiss.

[64]    Compare Doc. 15, Pl.'s 1st Am. Compl. with Doc. 1-2, Ex. A to Notice of Removal, Pl.'s Original Pet.

[65]    See Doc. 15, Pl.'s 1st Am. Compl. pp. 28-42.

intentional infliction of emotional distress ("IIED").[66]  Against
Defendant MHHS, Plaintiff raised a claim of negligent hiring and
supervision under Texas law.[67]

On June 13, 2014, Defendants Abdelmessiah and MHHS filed a
joint motion to dismiss Plaintiff's amended complaint.[68]  Plaintiff
responded, albeit belated by a few days, and Defendants
Abdelmessiah and MHHS replied.[69]  On July 29, 2014, Defendant
Cleveland filed a motion to dismiss.[70]  On August 20, 2014,
Plaintiff belatedly responded to Defendant Cleveland's motion with
leave of court.[71]  The court now addresses both pending motions to
dismiss.

## II.  Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the
complaint, on its face, fails to state a claim upon which relief
can be granted.  When considering a motion to dismiss, the court
should construe the allegations in the complaint favorably to the

---

[66]    See id. pp. 35-43.

[67]    See id. pp. 43-47.

[68]    See Doc. 16, Defs. Abdelmessiah & MHHS's Mot. to Dismiss.

[69]    See Doc. 17, Pl.'s Resp. to Defs. Abdelmessiah & MHHS's Mot. to
Dismiss; Doc. 19, Defs.' Abdelmessiah & MHHS's Reply.

[70]    See Doc. 20, Def. Cleveland's Mot. to Dismiss. Defendant Cleveland's
motion to dismiss was filed nearly two months after Plaintiff filed his amended
complaint.  It is not readily apparent from the docket activity record when
Defendant Cleveland received service of process.

[71]    See Doc. 23, Pl.'s Resp. to Def. Cleveland's Mot. to Dismiss; Doc.
28, Order Dated Sept. 12, 2014.

pleader and accept as true all well-pleaded facts. <u>Harold H.</u>
<u>Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 803 n.44 (5th Cir.
2011)(quoting <u>True v. Robles</u>, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations"
but must include sufficient facts to indicate the plausibility of
the claims asserted, raising the "right to relief above the
speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555
(2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).
Plausibility means that the factual content "allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged." <u>Iqbal</u>, 556 U.S. 678. A plaintiff must
provide "more than labels and conclusions" or "a formulaic
recitation of the elements of a cause of action." <u>Twombly</u>, 550
U.S. at 555. In other words, the factual allegations must allow
for an inference of "more than a sheer possibility that a defendant
has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

### III. Defendant Cleveland's Motion to Dismiss

Defendant Cleveland argues that all claims against him in his
official capacity should be dismissed, that he is not liable for
punitive damages in his official capacity, that the Fourteenth
Amendment claim based on the failure to provide medical treatment
is vague, and that the Section 1985 conspiracy claim is not
supported by sufficient factual allegations. Defendant Cleveland
did not challenge the other claims against him in his individual

capacity.  In his response, Plaintiff withdrew all claims against Defendant Cleveland in his official capacity.[72]  Thus, the court should dismiss the claims against Defendant Cleveland in his official capacity, which also dispenses with Defendant Cleveland's second argument regarding punitive damages for the claims against him in his official capacity.

The court proceeds in this section to discuss the Section 1983 claim that Defendant Cleveland failed to provide Plaintiff, a pretrial detainee, necessary medical care.  The court reserves the Section 1985 claim for discussion in a later section of this memorandum in connection with Defendant Abdelmessiah's similar arguments in favor of dismissal of that claim.

A plaintiff can establish a prima facie case under Section 1983[73] for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law.  <u>Doe v. Rains Cnty. Indep. Sch. Dist.</u>, 66 F.3d

---

[72]    Plaintiff requested leave to amend in order to remove the claims against Defendant Cleveland in this official capacity.  As the court recommends dismissal of those claims, there is no need for amendment.  Plaintiff's request for leave to amend is **DENIED**.

[73]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

1402, 1406 (5th Cir. 1995). The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law. <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

Pretrial detainees enjoy the same rights as convicted prisoners to "constitutional essentials like medical care and safety," but that right emanates from the Fourteenth Amendment's due process guarantees,[74] rather than the Eighth Amendment's protection against cruel and unusual punishment. <u>Jacobs v. W. Feliciana Sheriff's Dep't</u>, 228 F.3d 388, 393 (5th Cir. 2000). To prove a violation of his Fourteenth Amendment right to medical care based on a state official's episodic act or omission, a pretrial detainee must show that an officer acted or failed to act with subjective deliberate indifference. <u>Id.</u> (quoting <u>Nerren v. Livingston Police Dep't</u>, 86 F.3d 469, 473 (5th Cir. 1996)).

"To be actionable, the detention officer['s] conduct must demonstrate subjective awareness of a substantial risk of serious harm and a failure to take reasonable measures to abate this risk." <u>Kitchen v. Dallas Cnty., Tex.</u>, 759 F.3d 468, 482 (5th Cir. 2014). To be serious, the medical need must have been either one for which treatment was recommended or one that was so obvious as to be recognizable by a lay person as needing medical attention. <u>Id.</u>

---

[74] The Fourteenth Amendment states, in part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

15

Defendant Cleveland's one-paragraph argument in favor of dismissal does not cite the legal standard or argue that Plaintiff failed to allege the required elements to support this claim. Instead, Defendant Cleveland simply refers to Plaintiff's "vague assertions of a head injury and deprivation of medical attention" and complains that Plaintiff did not describe the type and extent of his alleged injuries with specificity and did not mention subsequent medical care or resulting impairment.[75]

In fact, Plaintiff alleged that Defendant Cleveland carried Plaintiff head first through the closed security office door and threw him down head first on the ground. Plaintiff further alleged that the resulting injury on his head began to bleed enough to drip into his eyes and to prompt him to request medical assistance. These allegations suggest that Defendant Cleveland had actual knowledge that Plaintiff had suffered an obvious head injury. After all, Defendant Cleveland knew exactly how much and the nature of the force he exerted on Plaintiff, and he must have seen the blood dripping down Plaintiff's face. If Defendant Cleveland was not aware of Plaintiff's injury at that point, certainly he would have been alerted to the head injury when Plaintiff requested medical care.

Plaintiff further alleged that Defendant Cleveland denied two requests by Plaintiff for medical care, stating that Plaintiff

---

[75]    Doc. 20, Def. Cleveland's Mot. to Dismiss pp. 8-9.

16

would receive medical care at the jail. According to Plaintiff, Defendant Cleveland's instruction to the one Hospital's staff person not to interact with Plaintiff inhibited all of the Hospital's staff persons present from responding to his requests for medical assistance. Although Defendant Cleveland cannot be held responsible for the failure to treat Plaintiff during the many hours he was held at the jail, Plaintiff's allegation that he was never treated gives rise to the inference that Defendant Cleveland did not arrange for or suggest to the transporting officer that Plaintiff receive medical treatment when relinquishing custody of Plaintiff.

Plaintiff's allegations satisfy his burden of pleading that Defendant Cleveland was aware of facts leading to an inference of excessive risk to Plaintiff's health, that Defendant Cleveland drew that inference, and that Defendant Cleveland disregarded the risk. Plaintiff's Section 1983 claim for deprivation of medical care should not be dismissed.

### IV.  Defendants Abdelmessiah and MHHS's Motion to Dismiss

Defendants Abdelmessiah and MHHS argue that Defendant Abdelmessiah is not a state actor and that Plaintiff failed to plead a violation of his Fourteenth Amendment rights by Defendant Abdelmessiah. They also contend that Plaintiff failed to plead sufficient facts to support his claims of a Section 1985 conspiracy and IIED against Defendant Abdelmessiah and negligent hiring and

supervision against Defendant MHHS.   Plaintiff counters each
argument, citing to portions of his amended complaint that he
contends satisfies each element of the causes of action pled.

**A.   Section 1983 Claim for Violation of Fourteenth Amendment**

As previously explained, a plaintiff can establish a prima
facie case under Section 1983 by establishing that his federal
constitutional or statutory rights were violated by an individual
acting under the color of state law.   Doe, 66 F.3d at 1406.   The
court first considers whether Plaintiff alleged facts to support
the inference that Defendant Abdelmessiah was a state actor and
then addresses whether Plaintiff successfully pled a violation of
his Fourteenth Amendment rights.

**1.   State Actor**

Section 1983 provides a remedy for constitutional violations
by individuals acting under color of state law.   42 U.S.C. § 1983.
When, as here, a plaintiff sues a private party under Section 1983,
the plaintiff can satisfy the requirement of state action by
showing that the defendant's action was so closely connected to the
State that it "may be fairly treated as that of the State itself."
Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S.
288, 295 (2001).

The United States Supreme Court has employed several different
methods of analysis, depending on the factual circumstances of the
cases it faced, to assess whether the private conduct at issue

amounted to state action.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982)(listing cases that exemplify each of four tests mentioned therein).  In 2005, the Fifth Circuit revisited the tests identified in Lugar, finding private action equivalent to state action only when: (1) a private entity "performs a function which is exclusively reserved to the State" ("public function test"); (2) the State "exerts coercive power over the private entity or provides significant encouragement" ("state compulsion test"); (3) "the State has inserted itself into a position of interdependence with the private actor, such that it was a joint participant in the enterprise (nexus test); or (4) the private actor was a "willful participant[] in joint action with the State or its agents" ("joint action test").  Cornish v. Corr. Servs. Corp., 402 F.3d 545, 549–50 (5th Cir. 2005)(internal citations and internal quotation marks omitted).  The first step is to identify the specific conduct about which Plaintiff complains.  See id.

In this case, Plaintiff complains that Defendant MHHS discriminated against him in the unfair application of the policy for retrieval of the belongings of a relative who died at the Hospital and that Defendant Cleveland arrested Plaintiff without probable cause at the direction of Defendant Abdelmessiah.  In order to cast state action onto Defendant Abdelmessiah, Plaintiff offers two theories.

Regarding the allegation of an unfair application of the

Hospital's policy, Plaintiff contends that the role of Defendant Abdelmessiah and the other Hospital's employees each as an agent of MHHS was to "safeguard unclaimed tangible property of persons who have died in their care that, if not claimed, will escheat to the State."[76] As the court understands Plaintiff's allegation, he is proposing that the Hospital is performing a public function (safeguarding property of deceased individuals) that is traditionally within the exclusive province of the State because such property may revert to the State in the absence of legal claimants.

Neither the law nor the facts support this theory. For the "public function test" to apply, the State must endow a private entity with powers or functions that are governmental in nature. See Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 460 (5th Cir. 2003). Very few of the many functions performed by government have been "exclusively reserved to the State." Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)(quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978)).

Although Texas law provides a process by which unclaimed property of deceased individuals may escheat, the provisions fall well short of laying immediate claim on behalf of the State on all assets of individuals who die in hospitals. See Tex. Prop. Code §§ 71.001-71.304. The statutory definition of "escheat" is "the

---

[76]     Doc. 15, Pl.'s 1st Am. Compl. p. 35.

vesting of title to property in the state in an escheat proceeding." Tex. Prop. Code § 71.001. Prior to a completed proceeding, the property cannot be considered state assets. More to the point of governmental functions reserved exclusively to the State, the State is not in the business of determining rightful claimants to property left by persons who die in hospitals and releasing those belongings.

Plaintiff cites no law supporting his contrary assertion that hospitals are safeguarding state assets by determining who may retrieve the belongings of deceased individuals. Plaintiff provides no factual support for finding an arrangement between the State and Defendant MHHS bestowing upon Defendant MHHS the responsibility to serve as a temporary trustee of state assets. Rather, Plaintiff simply postulates that, because people die in hospitals and hospitals decide to whom the decedent's property may be released, the hospitals are acting on behalf of the State. The court rejects this argument.

Regarding the allegation that Defendant Abdelmessiah directed Defendant Cleveland to arrest Plaintiff without probable cause, Plaintiff contends that the two defendants "came to a meeting of the minds . . . based on their mutual understanding of their standard operating procedure."[77] This allegation of a conspiracy

---

[77]    Doc. 17, Pl.'s Resp. to Defs. Abdelmessiah & MHHS's Mot. to Dismiss p. 19.

between Defendant Cleveland and Defendant Abdelmessiah implicates the nexus or "joint action" test.

In order to satisfy the state-action requirement in this respect, Plaintiff must allege that an agreement existed between the private and public defendants to commit an illegal act that resulted in a deprivation of constitutional rights. See Priester v. Lowndes Cnty., 354 F.3d 414, 420 (5th Cir. 2004)(citing Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994)).

As Plaintiff points out, he made many allegations in the complaint that Defendant Abdelmessiah directed Defendant Cleveland's actions by agreement between Defendant MHHS and HPD. For example, Plaintiff alleged "[u]pon information and belief" that it was common policy for Defendant MHHS's private security officers to direct the HPD officers while on the Hospital's premises, to demand that HPD officers comply with and enforce Defendant MHHS's "negligent and prejudiced policies," and to require HPD officers to accept direction from the Hospital's security officers.[78] Directly relevant to Plaintiff's encounter with Defendants Cleveland and Abdelmessiah, Plaintiff alleged that "Abdelmessiah elicited and directed Officer Cleveland to remove Plaintiff to an unmonitored area under Abdelmessiah's control on the sole grounds that he did not like or identify with Plaintiff's appearance."[79]

---

[78]    Doc. 15, Pl.'s 1st Am. Compl. pp. 7, 11, 19, 31, 36, 38, 46.

[79]    Id. p. 7.

Plaintiff pled "[u]pon information and belief" that Defendant Abdelmessiah directed Defendant Cleveland to remove Plaintiff from view of the hallway cameras and to detain him by physical means if necessary without informing Defendant Cleveland of any reasonable grounds for using force to take Plaintiff into custody.[80]  Further, Plaintiff pled that Defendant Cleveland did not witness the encounter between Plaintiff and Defendant Abdelmessiah, did not evaluate the situation, and did not make an independent judgment regarding probable cause before engaging Plaintiff, "therefore knowingly or recklessly disregard[ing] the possibility that the request to detain Plaintiff was based on racial, gender, class, or cultural discrimination."[81]

Accepting these allegations as true, as the court must, Defendant Cleveland, as a state actor in matters of law enforcement, essentially delegated his authority to make decisions regarding the arrest and detention of individuals on the Hospital's grounds to Defendant Abdelmessiah specifically and to Defendant MHHS's security personnel generally.  By Defendant Cleveland's acquiescence to Defendant Abdelmessiah's decisions, the two jointly participated in the allegedly unconstitutional enforcement of Texas laws.  See Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 749 (5th Cir. 2001)(discussing cases)(affirming that, when an officer

---

[80]     Id. pp. 19, 31.

[81]     Id. pp. 19-20, 31, 36-37.

23

arrests based on a preconceived arrangement and a private actor's designation of suspicion without independent investigation, the state-action requirement is met).

The case sub judice differs from a 2007 unpublished Fifth Circuit opinion discussing an incident in which a store manager called the police after a customer engaged in an argument with store employees. <u>Gonzales v. H.E. Butt Grocery Co.</u>, 226 F. App'x 342, 343 (5th Cir. 2007)(unpublished). The police eventually arrested the customer outside of the store. <u>Id.</u> In that opinion, which considered the district court's granting of summary judgment in favor of the store on a Section 1985 conspiracy claim, the court found no evidence of any agreement between the store or its agent and the police department or its officers. <u>Id.</u> at 345. Here, Plaintiff alleged that Defendant Abdelmessiah did more than call Defendant Cleveland; Plaintiff alleged that the two defendants had an agreement by which Defendant Cleveland would effectuate an arrest as directed by Defendant Abdelmessiah without conducting an independent investigation and regardless of probable cause or the need for force.

Plaintiff has alleged sufficient facts to support a finding that Defendant Abdelmessiah was a state actor.

### 2. <u>Fourteenth Amendment Violation</u>

The Fourteenth Amendment states, in part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. The Due Process Clause encompasses both procedural and substantive rights. <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 840 (1998).

The constitutional guarantee of procedural due process includes, at a minimum, notice and an opportunity to be heard in a meaningful time and manner. <u>Gibson v. Tex. Dept. of Ins.-Div. of Workers' Compensation</u>, 700 F.3d 227, 239 (5th Cir. 2012)(quoting <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80 (1972)). The analysis of a procedural due process claim has two steps: 1) whether a liberty or property interest exists with which the State has interfered; and 2) whether the procedures attendant upon the deprivation were constitutionally sufficient. <u>Meza v. Livingston</u>, 607 F.3d 392, 399 (5th Cir. 2010)(quoting <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989), <u>overruled in part on other grounds</u>, <u>Sandin v. Conner</u>, 515 U.S. 472 (1995)), <u>clarified on denial of reh'g</u>, 2010 WL 6511727 (5th Cir. 2010).

The constitutional guarantee of due process also includes a substantive component that protects individuals from arbitrary or conscience-shocking executive action. <u>See</u> <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys</u>, 675 F.3d 849, 867 (5th Cir. 2012)(quoting <u>Cnty. of Sacramento</u>, 523 U.S. at 847). The protection is limited, however. If another provision of the U.S.

Constitution provides "an explicit textual source of constitutional protection," the plaintiff's claims must be analyzed under that provision rather than the "more generalized notion of substantive due process." Wilson v. Birnberg, 667 F.3d 591, 599 (5th Cir. 2012)(quoting Conn v. Gabbert, 526 U.S. 286, 293 (1999)).

In this case, Plaintiff's amended complaint refers to his due process rights without specifying either the procedural or substantive component. Plaintiff alleged:

> Under color of state law, Cleveland detained and arrested Plaintiff without probable cause or the commission of any crime solely at the direction of Abdelmessiah, violating Plaintiff's Fourteenth Amendment right to Due Process. Defendant Cleveland's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights under the Fourteenth Amendment to the United States Constitution.[82]

On the other hand, Plaintiff also alleged that the "clear disparity between the treatment of Plaintiff and others frequenting the Hospital" amounted to a denial of his due process rights.[83] Referring to Defendant MHHS's "policy, procedure, and/or custom regarding retrieval of [a] loved one's belongings," Plaintiff alleged that Defendant MHHS's staff applied the policy with discriminatory intent that was "expressed and enforced by Officer Cleveland."[84]

---

[82]    Doc. 15, Pl.'s 1st Am. Compl. p. 36.

[83]    Id. p. 37.

[84]    Id. p. 36.

In a subsequent paragraph related to his Fourteenth Amendment claim, Plaintiff stated, "It is a violation of due process to arrest a person for attempting to retrieve property held by the State absent proof that such property is not owned by that person and further, that they are attempting a theft."[85]   Plaintiff continued, stating that Defendant MHHS's employees "were unable to articulate to Plaintiff the Hospital's requirements for the release of the unclaimed property, . . . implemented a disparate and prejudicial system . . ., and ha[d] in its employ Houston Police Department officers to execute these procedures at their whim."[86] He accused Defendant Cleveland of being used as Defendant Abdelmessiah's "instrumentality" and Defendant Abdelmessiah of "profiling" Plaintiff.[87]    Plaintiff asserted that Defendant Cleveland acted unreasonably in "follow[ing] a private entity's policies in the execution of official duties and [using] force to effectuate these policies, more specifically using force to prevent a hypothetical petty theft against the State by a party making a lawful claim."[88]

Defendant Abdelmessiah argues that the Fourteenth Amendment claim should be dismissed because the gravamen of Plaintiff's

---

[85]    Id. p. 37.

[86]    Id. p. 38.

[87]    Id.

[88]    Id.

allegations fall within the ambit of the Fourth Amendment, an explicit constitutional provision. Defendant Abdelmessiah argues alternatively that, to the extent Plaintiff's claim is focused on the alleged difficulties in retrieving his brother's belongings, the claim fails to state a constitutional injury.

In response, Plaintiff explains that the right he sought to enforce under the Fourteenth Amendment against Defendant Abdelmessiah was the right to equal protection, not due process. He argues that he had the right to be free from discrimination based on race, gender, class, and culture in the application of Defendant MHHS's policy for the retrieval of a relative's personal belongings. Plaintiff argues that Defendant Abdelmessiah would have followed the Hospital's policy if not for his unlawful bias against Plaintiff's race, gender, class, and culture and that Defendant Abdelmessiah concealed his animus by suggesting "a hypothetical 'property dispute.'"[89] Defendant Abdelmessiah, Plaintiff continues, directed Defendant Cleveland to carry out his illegal motivations by arresting Plaintiff without probable cause through the use of excessive force. Defendant Abdelmessiah's reply does not respond to Plaintiff's equal protection claim.

The court acknowledges that Plaintiff mentioned due process at least three times in the section of his complaint asserting a

---

[89] Doc. 17, Pl.'s Resp. to Defs. Abdelmessiah & MHHS's Mot. to Dismiss p. 14.

Fourteenth Amendment claim and never mentioned equal protection. Nevertheless, the court carefully reviews Plaintiff's allegations to determine whether they support the claim that his right to equal protection of the law was violated.[90] Essentially, Plaintiff claims that Defendant MHHS's policy on the retrieval of a relative's belongings after a death in the Hospital was unconstitutional as applied by Defendant Abdelmessiah.

In order to state a claim under the Equal Protection Clause, a plaintiff first must allege "that two or more classifications of similarly situated persons were treated differently" by a state actor. <u>Gallegos-Hernandez v. United States</u>, 688 F.3d 190, 195 (5th Cir. 2012). If successful, the court determines the appropriate level of scrutiny for the classification made. <u>Id.</u>

Plaintiff suggested several possible classifications. He alleged that he was treated differently from deceased individuals' relatives of different race, gender, class, culture, attire, appearance and/or social group. As an example, he pointed to the success of an unrelated woman who was able to collect Plaintiff's

---

[90]    As the court understands Plaintiff's response, he is not seeking damages based on either a procedural or a substantive due process violation. The court agrees with Defendant Abdelmessiah that Plaintiff has not pled a viable due process claim. A procedural due process claim would fail even absent Plaintiff's abandonment because he has failed, at a minimum, to identify either the legal source of his property right or what process he was constitutionally due under the circumstances. Plaintiff also explicitly denies that he is complaining that his arrest was unconstitutional under the Fourteenth Amendment, a claim that also would not survive because the Fourth Amendment provides an explicit constitutional source of protection against that alleged illegal conduct. Plaintiff cannot maintain a Fourteenth Amendment claim where an explicit constitutional provision provides the protection sought. <u>See</u> <u>Wilson</u>, 667 F.3d at 599.

brother's belongings "with minor incident except for the continued environment of general misfeasance."[91]  In another portion of the complaint, though, Plaintiff stated, "The only significant differences between Plaintiff and this non-relative [were] gender and actual relationship to the deceased."[92]

The question the court now faces is not whether Plaintiff's allegations will bear out but only whether Plaintiff stated an equal protection claim.  Plaintiff has alleged that Defendant Abdelmessiah treated similarly situated persons differently based on various classifications.  Because Defendant Abdelmessiah has not argued that Plaintiff failed to state an equal protection claim, the court need not delve into what level of scrutiny is appropriate or whether Defendant Abdelmessiah's actions were constitutional under the appropriate level of review.

Plaintiff's allegations are sufficient to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

**B.  Section 1985 Claim**

Pursuant to Section 1985(3), it is illegal for "two or more persons in any State or Territory [to] conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  The elements of a prima

---

[91]     Doc. 15, Pl.'s 1st Am. Compl. p. 37.

[92]     Id. p. 27.

facie case are taken directly from the statute:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994).

The language of Section 1985(3) requires that the conspirators' actions be driven by discrimination based on race or some other protected classification. Bryant v. Military Dep't of Miss., 597 F.3d 678, 687 (5th Cir. 2010)(citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Defendant Cleveland generally argues that Plaintiff's conspiracy allegations are "overbroad" and "do not present a plausible claim for relief."[93] Specifically, Defendant Cleveland challenges Plaintiff's allegation that Defendants Cleveland and Abdelmessiah conspired, arguing that Plaintiff did not allege how the meeting of the minds occurred. Similarly, Defendant Abdelmessiah contends that Plaintiff's allegations of conspiracy are conclusory and that Plaintiff failed "to identify what acts constituted an affirmative agreement [between] them to commit each illegal act."[94]

Plaintiff argues in response that Defendant Cleveland

---

[93]     Doc. 20, Def. Cleveland's Mot. to Dismiss p. 8.

[94]     Doc. 16, Defs. Abdelmessiah & MHHS's Mot. to Dismiss p. 13; see also id. pp. 9, 12.

perpetuated Defendant Abdelmessiah's "discriminatory intent" and "fabricated criminal charges."[95]   The two, Plaintiff concludes, thereby conspired to violate Plaintiff's rights to freedom from false arrest and excessive force and to deprive Plaintiff of equal protection by wrongfully detaining Plaintiff through force based on his race, gender, class, culture, appearance, and/or social group.

As discussed in finding that Defendants Cleveland and Abdelmessiah acted jointly, the allegations that HPD officers on the Hospital's grounds routinely deferred to the Hospital's policy and Defendant Abdelmessiah's requests for intervention without making an independent judgment.  Although Plaintiff did not witness their conversations, he was present when Defendant Cleveland allegedly acted without investigating the situation, used unnecessary force, and openly admitted that he had not decided the charge on which he planned to base Plaintiff's arrest.   These factual allegations are not sufficient to prove a conspiracy, but they are sufficient to state a claim that Defendants Cleveland and Abdelmessiah worked together to deprive Plaintiff of his rights to be free of false arrest and excessive force and of his right to equal protection.[96]

---

[95]     Doc. 17, Pl.'s Resp. to Defs. Abdelmessiah & MHHS's Mot. to Dismiss p. 24.

[96]     Plaintiff also contends that they conspired to deprive him of procedural due process by wrongfully detaining him through force.  The court does not find that Plaintiff has stated facts to support a conspiracy to deprive Plaintiff of procedural due process because he has not alleged what process he was due and denied while detained at the Hospital.

Plaintiff also alleged that Defendants Cleveland and Abdelmessiah, as well as the other present Hospital's employees, "implicitly conspired to deny Plaintiff access to medical attention."[97] The description given in Plaintiff's complaint does not raise a question of whether the individuals acted in unison to deprive Plaintiff of medical attention. As Plaintiff described it, the Hospital's staff silently watched as Defendant Cleveland denied Plaintiff medical care. The court cannot interpret silent acquiescence as an affirmative act of conspiracy.

Plaintiff's allegations support a Section 1985 claim against Defendants Cleveland and Abdelmessiah but only as to the freedom from false arrest and excessive force and the deprivation of equal protection.

## C. **IIED**

Under Texas law, an IIED claim stands only when the plaintiff establishes that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003)(citing Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998)). IIED is a "gap-filler" tort that does not "supplant or duplicate existing statutory or common-law remedies." Creditwatch, Inc. v.

---

[97] Doc. 15, Pl.'s 1st Am. Compl. p. 41.

<u>Jackson</u>, 157 S.W.3d 814, 816 (Tex. 2005).

Conduct is actionable only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Tiller</u>, 121 S.W.3d at 713 (quoting <u>Twyman v. Twyman</u>, 855 S.W.2d 619, 621 (Tex. 1993)). Whether conduct is extreme and outrageous is a question of law for the court to be analyzed on a case-by-case basis, and only when reasonable minds may differ will the question be presented to a jury. <u>Creditwatch, Inc.</u>, 157 S.W.3d at 817; <u>Tiller</u>, 121 S.W.3d at 713.

Defendant Abdelmessiah moves for dismissal of the IIED claim based on the arguments that the claim is unavailable because there is no gap in the available remedies under Section 1983 and that Plaintiff failed to allege sufficient facts to state a claim of IIED. They argue, "Despite Plaintiff's copious use of labels and conclusions in his emotional distress claim," Plaintiff did not allege sufficient facts to show how the "alleged delay in releasing another's personal effects or alleged commentary on clothing could plausibly constitute extreme and outrageous behavior as a matter of law."[98] Plaintiff responds that he pled IIED in the alternative as "a 'gap-filler' in the instance Plaintiff's other theories of

---

[98] Doc. 16, Defs. Abdelmessiah & MHHS's Mot. to Dismiss p. 14.

redress should, for some reason, fail."[99]  Plaintiff contends that Defendant Abdelmessiah was "verbally combative and racially insulting" and, "in order to satisfy his own sense of power, proceeded to have this grieving man physically detained by police authority."[100]

IIED is a common-law tort intended to provide a remedy where no other claim protects against the alleged intentionally inflicted outrageous conduct.  See Hoffmann-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 447 (Tex. 2004)(citing Standard Fruit & Vegetable Co., 985 S.W.2d at 68)(stating that IIED was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress").

Here, Plaintiff's allegations focus on Defendant Abdelmessiah's comments about Plaintiff's attire and appearance, Defendant Abdelmessiah's refusal to turn over the belongings of Plaintiff's recently deceased brother, Defendant Abdelmessiah's initial refusal to page anyone, and, ultimately, Defendant Abdelmessiah's provocation of Plaintiff's detention and the subsequent events.  Section 1983 provides a remedy for the alleged deprivation of rights during the detention and subsequent events.

---

[99]    Doc. 17, Pl.'s Resp. to Defs. Abdelmessiah & MHHS's Mot. to Dismiss p. 25.

[100]    Id. p. 27.

Whether Plaintiff is successful on that claim is immaterial.  See Hoffmann-La Roche Inc., 144 S.W.3d at 448 ("If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim.").

The question remains, though, whether Defendant Abdelmessiah's actions prior to the detention were sufficiently outrageous to give rise to an IIED claim.  As pled, Defendant Abdelmessiah's conduct was definitely insensitive, rude, unprofessional, and perhaps discriminatory.  Yet, he did not physically or verbally threaten Plaintiff, and his comments were not laced with obscene language or overt racism.  See Tiller, 121 S.W.3d at 714 (finding that a project owner's repeated threats to terminate valuable construction contracts directed at the spouse of a contractor during and after the contractor's unsuccessful battle with cancer did not rise to the level of extreme and outrageous conduct).

Plaintiff has not pled facts supporting a finding of sufficiently outrageous conduct that are not covered by another recognized theory of redress.

## D.  Negligent Hiring and Supervision

A claim based on negligent hiring and supervision is directed at the employer for its negligence in hiring or supervising "an employee whom the employer knows, or by the exercise of reasonable

care should have known, is unfit or incompetent, and whose unfitness or incompetence creates an unreasonable risk of harm to others because of the employee's job-related duties." <u>Mindi M. v. Flagship Hotel, Ltd</u>, 439 S.W.3d 551, 557 (Tex. App.—Houston [14th Dist.] 2014, pet. filed).  In context of proving the elements of negligence (duty, breach of duty, damages, and causation), the plaintiff must show that the employer's "failure to investigate, screen, or supervise" its employees proximately caused the injuries alleged.  <u>Fifth Club, Inc. v. Ramirez</u>, 196 S.W.3d 788, 796 (Tex. 2006)(quoting <u>Doe v. Boys Clubs of Greater Dallas, Inc.</u>, 907 S.W.2d 472, 477 (Tex. 1995)); <u>see also</u> <u>Mindi M.</u>, 439 S.W.3d at 557 (citing <u>IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason</u>, 143 S.W.3d 794, 798 (Tex. 2004)).  Proximate cause has two aspects: cause-in-fact and foreseeability.  <u>Read v. Scott Fetzer Co.</u>, 990 S.W.2d 732, 737 (Tex. 1998).

Defendant MHHS argues that Plaintiff failed to state an underlying actionable tort and failed to allege sufficient facts to show proximate cause.  Plaintiff's response argues that employees of Defendant MHHS were negligent in applying the Hospital's policy for the retrieval of belongings by relatives of deceased patients and that Defendant Abdelmessiah's failure to follow the policies led to Plaintiff's unlawful arrest.

Plaintiff wholly failed to plead facts supporting a finding that Defendant MHHS's negligence in hiring and supervision

proximately caused Plaintiff's injuries. The issue is not whether the actions of Defendant Abdelmessiah and the other employees were tortious, but whether tortious acts were a foreseeable result of Defendant MHHS's hiring and supervision practices. In support of foreseeability, Plaintiff alleged that Defendant MHHS would have known that Defendant Abdelmessiah was a danger to others, that physical injury would likely result from hiring and/or failing to supervise a prejudiced individual as a security supervisor, and that "physical injury would happen should a security guard and/or police officer abuse his or her position of authority."[101]

These statements are not factual allegations supporting foreseeability but are theoretical speculation. Plaintiff cites no facts to support that Defendant MHHS had or should have had knowledge that Defendant Abdelmessiah was a danger to others or was a prejudiced individual. That physical injury could result from the abuse of a security guard or police officer's authority does not answer how Defendant MHHS was to anticipate, in this case, that Defendants Cleveland and Abdelmessiah would abuse their discretion as alleged.[102]

---

[101]    Doc. 15, Pl.'s 1st Am. Compl. pp. 45-46.

[102]    In his response, Plaintiff cites a footnote in <u>Goodarzi v. Hartzog</u>, Civ. Action No. H-12-2870, 2013 WL 3110056, at *14 n.15 (S.D. Tex. June 14, 2013)(slip op.), that addressed the defendant's argument that the plaintiff failed to allege facts demonstrating the defendant, the same hospital as here, contemplated that the plaintiff would cause a disturbance in the Hospital leading to the summoning of security, to a subsequent altercation between the security staff and the plaintiff, and ultimately to the plaintiff's arrest. The footnote points out that the defendant must have foreseen breaches of the peace because it hired a police officer as an off-duty security guard and their employees knew

Because Plaintiff failed to plead facts to demonstrate that Plaintiff's alleged injuries were foreseeable based on Defendant MHHS's hiring and/or supervision of Defendant Abdelmessiah and/or any other employee, Plaintiff's claim of negligent hiring and supervision should be dismissed.

## V. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant Cleveland's motion be **GRANTED** as to:

(1) Plaintiff's claims against Defendant Cleveland in his official capacity; and

(2) Plaintiff's Section 1985 claim that Defendant Cleveland conspired with Defendant Abdelmessiah to violate Plaintiff's constitutional rights to medical treatment and procedural due process.

The court **RECOMMENDS** that Defendant Cleveland's motion be **DENIED** as to:

(1) Plaintiff's Section 1983 claim that Defendant Cleveland failed to provide Plaintiff necessary medical care; and

(2) Plaintiff's Section 1985 claim that Defendant Cleveland conspired with Defendant Abdelmessiah to violate Plaintiff's constitutional rights to equal protection, to be free from false arrest, and to be free from the use of excessive force.

---

whom to call. <u>Id.</u>

Plaintiff concludes from the footnote: "In light of the fact that Defendants rely on this case law by citing to it repeatedly and attaching it to their response, and the case *clearly* points out that Defendant Memorial Hermann is ignoring that foreseeability is implied, Plaintiff should not be responsible for further arguing the foreseeability element of a negligence claim." Doc. 17, Pl.'s Resp. to Defs. Abdelmessiah & MHHS's Mot. to Dismiss p. 29. Foreseeability is not implied. Plaintiff must allege facts to support a finding that Defendant MHHS's actions in hiring and/or supervising proximately caused his injuries, meaning that Defendant MHHS's actions brought about Plaintiff's alleged injuries and that those injuries should have been anticipated by Defendant MHHS as a result of its actions. <u>See</u> <u>Fifth Club, Inc.</u>, 196 S.W.3d at 796; <u>Read</u>, 990 S.W.2d at 737.

Defendant Cleveland did not challenge Plaintiff's Section 1983 claims for violations of Plaintiff's constitutional rights to equal protection, due process,[103] to be free from false arrest, and to be free from excessive force.

The court further **RECOMMENDS** that Defendants Abdelmessiah and MHHS's motion be **GRANTED** as to:

(1) Plaintiff's IIED claim against Defendant Abdelmessiah;

(2) Plaintiff's negligent hiring and supervision claim against Defendant MHHS;

(3) Plaintiff's Section 1983 claim that Defendant Abdelmessiah violated Plaintiff's constitutional right to due process; and

(4) Plaintiff's Section 1985 claim that Defendant Abdelmessiah conspired with Defendant Cleveland to violate Plaintiff's constitutional rights to medical treatment and procedural due process.

The court **RECOMMENDS** Defendants Abdelmessiah and MHHS's motion be

**DENIED** as to:

(1) Plaintiff's Section 1983 claim that Defendant Abdelmessiah violated Plaintiff's right to equal protection; and

(2) Plaintiff's Section 1985 claim that Defendant Abdelmessiah conspired with Defendant Cleveland to violate Plaintiff's constitutional rights to equal protection, to be free from false arrest, and to be free from the use of excessive force.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto

---

[103]    The court notes that the due process claim against Defendant Cleveland cannot be maintained for the reasons explained herein but refrains from recommending its dismissal absent a motion by Defendant Cleveland.

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 19th day of November, 2014.

_____
U.S. MAGISTRATE JUDGE